Ana Marie **LYONS**, Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

Civil Action No. 1:13–cv–373–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 7, 2014.

Charles B. Tanksley, James Cameron Tribble, The Barnes Law Group, LLC, Marietta, GA, for Plaintiff.

Marvin Dewayne Dikeman, Melissa Cordell Patton, Webb Zschunke Neary & Dikeman, LLP, Atlanta, GA, for Defendant.

### *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This insurance-coverage dispute is before the Court on Defendant Allstate Insurance Company's motion for summary judgment [43].

## I. Background

Plaintiff Ana Lyons purchased a homeowner's insurance policy from Allstate for the house she owned in Powder Springs, Georgia. In November 2002 Lyons remarried and moved to Douglasville, Georgia. From November 2002 until December 2009 no one resided in the Powder Springs house, although Lyons kept furniture in the house, retained utility service and performed basic upkeep. In December 2009 her son and his girlfriend moved into the house and lived there until February 2012.

At some point after Lyons moved from Powder Springs to Douglasville, Allstate began mailing correspondence to her at her Douglasville address. For purposes of this Order, the Court will assume that Lyons provided her new address to Allstate in February 2006. In 2011 Lyons suffered a loss to the roof of the Powder Springs house, which Allstate settled by mailing a check to her Douglasville address.

On February 17, 2012, the Powder Springs house was destroyed by fire. Allstate denied coverage because Lyons did not reside at the house when the fire occurred.

## II. Discussion

### A. Legal Standard

Summary judgment is proper when no genuine issue about any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477

U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. Interpreting Insurance Contracts Under Georgia Law

■ Lyons's insurance policy is governed by state law. In Georgia, the interpretation of an insurance policy is "a question of law," O.C.G.A. § 13–2–1, to which the court applies the "ordinary rules of contract construction," *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 269 Ga. 326, 498 S.E.2d 492, 494 (1998). Several well-worn rules guide the interpretation of insurance policies. "Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Id.* (quoting *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 299 S.E.2d 561, 563 (1983) (citations omitted)) (internal quotation mark omitted).

■ Courts interpreting insurance policies under Georgia law should ascertain the parties' intention by examining the contract as a whole. *Ryan v. State Farm Mut. Auto. Ins. Co.,* 261 Ga. 869, 413 S.E.2d 705, 707 (1992). The terms of an insurance contract should be considered in light of their legal and ordinary meaning, *id.,* and the policy "should be read as a layman would read it," *York Ins. Co. v. Williams Seafood of Albany, Inc.,* 273 Ga. 710, 544 S.E.2d 156, 157 (2001). If the terms are unambiguous—meaning fairly susceptible to only one meaning, *Collier v. State Farm Auto. Ins. Co.,* 249 Ga.App. 865, 549 S.E.2d 810, 811 (2001)—then "the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured," *Tripp v. Allstate Ins. Co.,* 262 Ga.App. 93, 584 S.E.2d 692, 694 (2003) (quoting *Grain Dealers Mut. Ins. Co. v. Pat's Rentals,* 269 Ga. 691, 505 S.E.2d 729, 730 (1998) (internal quotation mark omitted)). But if the terms are ambiguous, the court must attempt to resolve the ambiguity by applying the relevant canons of contract construction. *Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc.,* 285 Ga.App. 844, 648 S.E.2d 170, 174 (2007). Finally, if the ambiguity cannot be resolved by applying the canons of construction, "the issue of what the ambiguous language means and what the parties intended must be resolved by the [fact finder]." *Id.*

### C. Analysis

As an initial matter, the Court assumes without deciding that Lyons satisfied her obligation to inform Allstate of the change in use of the residence. The issue then is whether she resided in the Powder Springs house. Allstate argues that she did not. Lyons counters that whether she used the Powder Springs house as a residence is a question of fact for a jury.

Under the policy, Allstate agreed to provide coverage, and "[i]n return" Lyons agreed to "[1] pay the premium when due,

[2] comply with the policy terms and conditions, and [3] inform [Allstate] of any change in title or use of the **residence premises.**" The policy in turn defines *residence premises* as "the **dwelling,** other structures and land located at the address stated on the Policy Declarations." Under the policy Allstate provides dwelling protection for "[y]our **dwelling** including attached structures." And *dwelling* is defined as the "one, two, three or four family **building structure**[1] . . . where **you** reside and which is principally used as a private residence." *You* is defined narrowly: "the person named on the Policy Declarations as the insured and that person's resident spouse." The insurance policy, however, does not explicitly define *reside.* But it does offer some clues about what this term means. For example, according to the policy the insured resides in "a structure with walls and a roof" that "is principally used as a private residence." Put simply, the insured resides in the residence premises.

█ It is undisputed that the Powder Springs house has not been Lyons's or her husband's primary residence since November 2002. But this alone does not mean that she did not reside there for purposes of the policy. In Georgia, unless an insurance policy explicitly mandates that the insured maintain residency exclusively at the covered property[2]—which Lyons's policy does not—the insured may have several residences for purposes of insurance coverage. *Baldwin v. State Farm Fire & Cas. Co.,* 264 Ga.App. 229, 590 S.E.2d 206, 207 (2003).

█ Lyons contends that even though she moved out of the Powder Springs house in November 2002, a jury could conclude that she was still using that house as a secondary residence. But this is possible only if keeping furniture and personal items in the house, ensuring that the utilities stayed on, maintaining the lawn, staying in the house a couple of times a year, and repairing the termite damage she discovered fits within the ordinary meaning of *reside.* It does not.

█ When Georgia courts construe words that are left undefined in an insurance policy, they often turn to dictionaries "because they supply the plain, ordinary, and popular sense unless the words are terms of art." *W. Pac. Mut. Ins. Co. v. Davies,* 267 Ga.App. 675, 601 S.E.2d 363, 367 (2004). THE AMERICAN HERITAGE DICTIONARY 1483 (4th ed.2006) defines reside as "[t]o live in a place permanently or for an extended period." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (3d ed. 1986) defines reside as "to dwell permanently or continuously: have a settled abode for a time: have one's residence or domicile." Given the ordinary meaning of reside, no reasonable jury could conclude that Lyons's actions indicated that she resided in the Powder Springs house at the time of the fire—the legally salient period.

Such a conclusion would be consistent with Lyons's own testimony. During her deposition, Lyons testified that if someone had asked her six months before the fire where she resided, she "probably would have said I lived in Douglasville." This makes sense. After November 2002 Lyons never spent an extended period of time in the Powder Springs house. At the time of the fire, her driver's license, tax

---

**1.** "[A] structure with walls and a roof."

**2.** *E.g., Ga. Farm Bureau Mut. Ins. Co. v. Kephart,* 211 Ga.App. 423, 439 S.E.2d 682, 683–84 (1993).

returns, and credit card and bank statements all listed the Douglasville house as her place of residence. Conversely, her son and his girlfriend were living in the Powder Springs house at that time. In short, Lyons offers no evidence that the Powder Springs house was her residence premises at any time between when the policy period began (March 17, 2011) and when the fire occurred (February 17, 2012).

Additionally, the cases that Lyons cites, which hold that whether the plaintiff resided at the insured premises is a jury question, are distinguishable. In two of the three cases cited, the definition of *residence premises* in the insurance policy was either materially different than the definition here or completely absent. *See Huckaby v. Travelers Prop. Cas. Co.*, No. 5:10–cv–299(MTT), 2011 WL 6300569, at *1 (M.D.Ga. Dec. 16, 2011) (materially different definition); *Cain v. Hanover Ins. Co.*, No. 1:10–cv–204–JEC, 2011 WL 4356391, at *5 (N.D.Ga. Sept. 16 2011) (policy provided "no definition of the term or other explanation that is helpful to this litigation"). The third case involved the death of an eight-year-old boy. The boy's parents had joint custody, but he died at his father's house, where he spent 129 days during the prior year. The trial court held that these facts created a jury question as to whether the boy was a resident of his father's household, and the Georgia Court of Appeals affirmed. *Baldwin*, 590 S.E.2d at 207. Here, the policy requires Lyons to reside at the property. The plain and ordinary meaning of *reside* requires more than keeping the utilities turned on and furnishing ordinary upkeep; and unlike

the eight-year-old boy in *Baldwin*, Lyons had not spent significant time at the Powder Springs house during the relevant policy year.[3]

## III. Conclusion

Accordingly, Allstate's motion for summary judgment [43] is GRANTED. The Clerk is DIRECTED to close this case.

---

**3.** In her brief in opposition to Allstate's motion for summary judgment, Lyons does not raise a waiver or estoppel argument with respect to the residency requirement, despite suggesting such an argument in her complaint. The Court therefore will not address such an argument.